**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **NEW LIFE CELEBRATION CHURCH OF GOD, INC.,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 22 C 3192** |
| **CHURCH MUTUAL INSURANCE CO.,** | ) ) ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

This matter is before the Court on a motion for summary judgment filed by Church Mutual Insurance Company on the claims of New Life Celebration Church of God. Church Mutual issued a property and liability insurance policy to New Life. In this suit, New Life asserts claims for breach of contract (Count 1) and violation of section 155 of the Illinois Insurance Code, 215 ILCS 5/155 (Count 2). New Life alleges that Church Mutual is liable to cover losses for physical damage sustained at New Life's property and that its conduct in failing to pay New Life's claim amounts to "vexatious and unreasonable" conduct under section 155. For the reasons stated below, this Court grants Church Mutual's motion.

**Background**

The factual record the Court considers when ruling on a motion for summary judgment is framed by the parties' Local Rule 56.1 statements and responses, although the Court retains discretion to "consider other materials in the record" where

appropriate.  Fed. R. Civ. P. 56(c)(3).  Except as otherwise noted, the following represents the undisputed facts as presented in the parties' L R. 56.1 statements.  The Court notes that New Life filed a rather sparse L.R. 56.1 statement, so the Court has incorporated some of the allegations in New Life's complaint to make the discussion easier to follow.

Since 2010, New Life, a non-profit corporation that owns a church and other related property, purchased property and liability insurance coverage from Church Mutual, a mutual insurance company that provides insurance for religious and other non-profit entities.  This lawsuit concerns Church Mutual's issuance of insurance with effective dates from March 22, 2018 to March 22, 2021.

New Life operates a religious institution (the Parish) located at 14243 Dante Ave. in Dolton.  In early 2021, New Life discovered that the Parish's buildings had sustained interior and exterior damage.  New Life retained a public adjuster called Semper Fi to inspect the damage and assist in filing an insurance claim with Church Mutual. According to New Life, Semper Fi determined that a wind and hailstorm on June 10, 2020 had caused the property damage.  It appears that John Farenzena, a public adjuster with Dragon Exteriors LLC, worked with Semper Fi to prepare a report on New Life's behalf to support the insurance claim.

The insurance policy that Church Mutual issued to New Life covered property damage related to wind and hailstorms, with certain exceptions.  *See* Def.'s Ex. 1 at 98. On August 18, 2021, after New Life filed its claim with Church Mutual, the insurer sent New Life a letter stating that it would partially honor the claim, with respect to wind damage that had impacted roofing on the Parish's Annex building.  Church Mutual

denied coverage, however, for claimed hail damage, contending that any hailstorm that caused damage to the property had occurred on or before July 13, 2015 and thus predated the current policy period. Def.'s Ex. 4. Church Mutual then sent an additional letter on August 23, 2021 confirming that it would partially cover the estimated repair value for the wind damage, a total of $627.14.

The relevant portion of Church Mutual's insurance policy states: "We cover loss or damage commencing: [ ] During the policy period shown in the Declarations Page," and "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations Page caused by or resulting from any Covered Cause of Loss." Def.'s Ex.1 at 60, 69. The policy includes "windstorm or hail" as a specified cause of loss. *Id*. at 98. The parties dispute whether the alleged hailstorm, a covered loss with certain exclusions, occurred during the policy period between 2018 and 2021 and therefore whether it falls under the policy's coverage. New Life's claims in this lawsuit challenge Church Mutual's denial of coverage on its claim for hail damage under a breach of contract theory.

In support of its motion for summary judgment, Church Mutual cites testimony from Dr. John R. Scala, a meteorology expert. Dr. Scala says that there was no hailstorm on June 10, 2020 and that the only hailstorm capable of creating the damage at the Parish occurred on July 13, 2015. Steve Byron, a forensic engineering and causation expert, confirms Dr. Scala's conclusions and contends that the Parish dealt with water and roof damage long before the alleged date of loss.

In response to Church Mutual's motion, New Life points to a number of items of evidence to support its contention that hail damage occurred during the 2018-2021

policy period.  This includes a "Benchmark® Hail History Report" obtained by Church Mutual that indicates a hailstorm involving one inch diameter hail occurred at or near the property address on May 23, 2020.  Pl.'s Ex. A.  The report further states that "0.75 [inches] is [the] lower boundary of jail size that causes property damage.  Typically damaging hail ranges from 1-4 [inches] diameter."  *Id.* at 3.  New Life also points to deposition testimony from Dr. Michael Reynolds, the founding pastor of New Life, who reported that Church members had discussed a damaging weather event in June 2020.  Similarly, New Life points to deposition testimony from Debra Jones, a deaconess at the Parish, who did not see the event but says that sometime in June 2020 she heard hail hitting the building and later found her car damaged with a broken window, which she believes was a result of the hailstorm.  New Life also cites statements by Gus Arvanitis, a retained damages expert from Four Elements Restoration, who provides an estimated cost to repair the property damage.

## Discussion

Church Mutual has moved for summary judgment on both Counts 1 and 2.  Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The non-moving party is then required to identify material facts that demonstrate a genuine

4

dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013).

## A.    Breach of contract (Count 1)

Under Illinois law, the interpretation of an insurance policy is a question of law. *Sokol & Co. v. Atl. Mut. Ins. Co.*, 430 F.3d 417, 420 (7th Cir. 2005). Because an insurance policy is considered a contract, contract law governs insurance policy disputes. *Wehrle*, 719 F.3d at 842.

The insured bears the burden to prove that its alleged loss is covered under a policy's terms. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 151 (7th Cir. 1994). If the insured establishes this, the insurer may then point to an exclusion or limitation that defeats the insured's claim. *Id.*

Here, the Court looks to Church Mutual's insurance policy, which states that it extends coverage for damage resulting from specified causes, such as wind and hail, with certain exclusions. Def.'s Ex. 1 at CMIC 1985. To prevail on its claim under the insurance policy, New Life must be able to demonstrate that the wind or hail in question caused the alleged property damage. *Couri v. Home Ins. Co.*, 53 Ill. App. 3d 593, 596-97, 368 N.E.2d 1029, 1032-33 (1977).

The Court need not resolve whether a reasonable factfinder could determine that a hailstorm occurred on June 10, 2020 or, for that matter, at some other point during the three-year policy period. Even if there is sufficient evidence for a juror to find that a hailstorm occurred during the policy period, New Life has not pointed to evidence that

would enable a reasonable factfinder to conclude the hailstorm caused the Parish's property damage.

### 1.    Church Mutual's letters

In response to New Life's coverage claim, Church Mutual responded with two letters, dated August 18, 2021 and August 23, 2021, respectively.  A reasonable juror would not be able to find these letters amount to any sort of an admission or concession that the damage alleged in this lawsuit is covered by the insurance policy.  The August 18, 2021 letter says that it concerns only "wind damage to the areas of the ridge cap and membrane roofing on the Annex building."  Def.'s Ex. 4.  The letter goes on to state that "No hail impact or interior water damage . . . is related to a covered cause of loss from the reported date of loss."  *Id.*  The letter then identifies a hailstorm on or before July 2015 as the cause of the hail damage.  *Id.*

Although New Life suggests that the August 18, 2021 letter amounts to a waiver of Church Mutual's position that the loss is not covered by the policy, Church Mutual retained all defenses by including an express disclaimer in the letter, clearly showing an intent not to waive any of its rights.  *Id.*; *see Liberty Mut. Fire Ins. Co. v. Woodfield Mall, L.L.C.*, 407 Ill. App. 3d 372, 393, 941 N.E.2d 209, 226 (2010) ("Waiver consists of the insurer's intentional relinquishment of a known right."); *see also PQ Corp. v. Lexington Ins. Co.,* 860 F.3d 1026, 1036 (7th Cir. 2017) (explaining that for an implied waiver there must be a "clear, unequivocal, and decisive act of its opponent manifesting an intention to waive its rights.")  The letter also proposes alternate causes for some of the property damage, including a bullet hole, deterioration, and other repair issues, all of which are unrelated to hail damage.

It is possible that New Life, by citing Church Mutual's letter, may be attempting to advance a theory of equitable estoppel. Equitable estoppel may, in appropriate circumstances, require an insurer to pay for a claim that is outside the terms of its coverage. *Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, 927 F.3d 1007, 1012–13 (7th Cir. 2019). It requires a three-step showing. The insured must prove that the insurance company "misled it into believing it would cover the suit", that it relied on the misunderstanding, and that it was prejudiced as a result. *Rosemoor Suites, LLC v. Harleysville Lake States Ins. Co.*, 444 F. Supp. 3d 902, 909 (N.D. Ill. 2020). For the reasons explained earlier, however, no reasonable factfinder could find that Church Mutual's letters misled New Life into believing that the hail damage claim was covered. Thus, any equitable estoppel argument does not even get past step one.

New Life also argues, with respect to the Church Mutual letter that it is unreasonable to believe that the property was damaged by a hailstorm over five years earlier, as the Parish continued to operate during the intervening period. This point, however, does not assist New Life in meeting its burden to establish, through evidence, that it suffered a covered loss within the policy period.

### 2. The Benchmark report

As discussed earlier, New Life points to a Benchmark® report that indicates a probability of a hailstorm on May 23, 2020 that could have been strong enough to damage property. It is not clear to the Court where this gets New Life; its position in this litigation (at least previously) was that the damaging hailstorm occurred around a month later. That aside, however, these statements in the report are not supported by anything else; a foundation is lacking that would allow this report to be considered as evidence of

7

causation.  Among other things, New Life has offered nothing to explain how the report was developed or how its conclusions were reached.  On the present record, and without more, the report would not be admissible in evidence, let alone sufficient to enable a finding in New Life's favor.

### 3.    Dr. Michael Reynolds

New Life also points to Dr. Michael Reynolds' deposition testimony.  Dr. Reynolds, a leader at the Parish, states that churchgoers told him about a storm in June 2020.  This evidence is inadmissible hearsay; it consists of out-of-court statements by others offered to prove the truth of the matters asserted in those statements.  *See* Fed. R. Evid. 801(c).  And there is no plausible argument for the application of any exception to the hearsay rule.  Inadmissible evidence may not be considered on a summary judgment motion.  *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).  Dr. Reynolds's testimony, therefore, does not enable New Life to avoid summary judgment.

### 4.    Debra Jones

New Life also references the deposition testimony of Debra Jones, who testified that she did not see the hailstorm but that she heard it falling on the building and observed damage to her car's window afterwards.  She is unable to identify a specific date and states that she only remembers that a storm happened sometime in June 2020. Ms. Jones describes that she heard "lots of loud noises" and that it was raining the same day, causing the Parish building to flood.  Def.'s Ex. 11 at 19-22, 26.  She also testified, however, that she did not inspect the Parish property after the storm.  Though her testimony shows that her car may have been damaged by hail, this observation does not extend to the building, which is what this lawsuit is about.  To put it another

way, damage to a car from hail does not suggest damage to the Parish building's roof. And Ms. Jones does not state that she observed any damage to the building after the storm that she knew was not there before the storm. For these reasons, Ms. Jones' deposition testimony is insufficient, either alone or together with the other evidence that New Life cites, to permit a reasonable factfinder to determine that the hailstorm she heard caused the damage to the Parish property.

### 5. John Farenzena

Church Mutual notes that New Life relied on John Farenzena's findings to prepare its policy claim regarding the wind and hail damage to its property. Based on the exhibits Church Mutual has submitted in connection with its summary judgment motion, Mr. Farenzena, a public adjustor at Dragon Exteriors, LLC, inspected the property and consulted with Semper Fi Public Adjusters to prepare a report, dated in March 2022, outlining the estimated cost of repairs. Def.'s Stat. of Facts ¶ 51. Although New Life alleges in its complaint that it retained Semper Fi to inspect and estimate the alleged loss at its property, it has made no effort to produce any further details about this inspection in connection with the summary judgment motion. For example, New Life has not offered any detail regarding Mr. Farenzena's investigation or that explains his methods, let alone how he appears to have concluded that a storm during the policy period caused the damage at the property. In fact, New Life does not even mention Mr. Farenzena in its response brief. On the present record, at least as New Life has argued it, any opinions or conclusions by Mr. Farenzena lack an evidentiary foundation that would render them admissible. It is not the Court's responsibility to sift through the record to identify a party's arguments. *See, e.g., United States v. Dunkel*, 927 F.2d 955,

956 (7th Cir. 1991).

### 6. Gus Arvanitis

New Life has also produced a report by its retained damages expert, Gus Arvanitis, an employee of Four Elements Restoration. This report, prepared in December 2023, totals the estimated cost to repair the damage at the Parish property. However, it says nothing about whether a hailstorm occurred during the policy period and if so, whether it caused the damage asserted in New Life's claim.

### 7.    Conclusion

For the reasons the Court has discussed, New Life has failed to show that there is a triable issue regarding causation of the claimed damage by a hailstorm or any other event or condition covered under the Church Mutual policy. For this reason, Church Mutual is entitled to summary judgment on Count 1, and the Court need not address the parties' dispute about whether, if successful, New Life is entitled to the "actual cash value" or the "replacement cost value" for covered losses.

## B.    Section 155 (Count 2)

To prevail on a claim under section 155 of the Illinois Insurance Code, a plaintiff must have a successful claim on the insurance policy at issue; the statute does not provide a standalone cause of action. *Hoover v. Country Mut. Ins. Co.*, 2012 IL App (1st) 110939, 39, 975 N.E.2d 638, 646. Because New Life's claim for breach of contract lacks merit, Church Mutual is entitled to summary judgment on the section 155 claim as well.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary

judgment [dkt. no. 69] on both of plaintiff's claims.  The Clerk is directed to enter

judgment stating:  This case is dismissed with prejudice.

Date:  October 18, 2024

MATTHEW F. KENNELLY
United States District Judge